JAMES F. HALE *vs.* NEW YORK AND NEW ENGLAND
RAILROAD COMPANY.

Suffolk.    March 7, 1899. — October 18, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Personal Injuries — Master and Servant — Negligence — Action.*

In an action for personal injuries received from the bursting of the boiler of a locomotive engine on which the plaintiff was employed as a fireman, and the blowing out from the same of an arch pipe where it was attached to the flue sheet of the fire box by a slip joint, all the witnesses on both sides testifying that the slip-joint method was proper and safe, the refusal of the judge to rule that the jury would not be justified in finding that the defendant was guilty of negligence in respect to adopting such method, affords the defendant good ground of exception.

TORT, for personal injuries sustained by the plaintiff while in the defendant's employ as a fireman on a locomotive engine, through the alleged negligence of the defendant.    At the trial in the Superior Court, before *Bishop*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*F. A. Farnham*, for the defendant.

*J. J. Feely*, for the plaintiff.

HAMMOND, J.    This was an action of tort, in which the plaintiff claimed to recover damages for personal injuries received from the bursting of a locomotive boiler and the flying out from the same of an arch pipe.    The plaintiff at the time of the accident was the fireman of the locomotive of which the boiler formed a part, and was in the discharge of his duty on the engine and in the act of shovelling coal upon the fire when the explosion occurred.    The arch pipe was an iron pipe in the fire box of the engine, and connected the top part of the boiler immediately over the fire box with that part of the boiler which came against the forward end of the fire box.    The fire box was about eight or nine feet long and about four or five feet in width and in height.    The top of the fire box was known as the crown sheet, and the forward end was known as the flue sheet.    The boiler comprised one continuous water space, both

in front and above the fire box. The purpose of the arch pipes, of which there were four side by side, was partly to give additional heating space to the water in the boiler, and partly to furnish support for an arch of bricks which was built within the fire box for the purpose of so directing the course of the fire as to distribute the flames in all parts of the fire box. The arch pipes were attached near the rear end of the crown sheet and ran down vertically one foot, then bending and running in a straight line towards the lower part of the flue sheet; then at a distance of nearly a foot from the flue sheet, bending and running horizontally to the flue sheet where they were attached. The accident consisted in the blowing out of one arch pipe at its attachment to the flue sheet, thus permitting the escape of water and steam into the fire box, and knocking the plaintiff off the locomotive. After the accident it was found that the lower end of the arch pipe was resting upon the bottom of the fire box, and that the pipe was somewhat bent.

The theory of the plaintiff was that the connection between the lower end of the arch pipe and the flue sheet was not properly made, either because the method adopted was not safe, or because the pipe was not strong or long enough, or because in some way the work of making the connection was negligently done.

The trial judge in charging the jury stated as among the claims made by the plaintiff the following: " In the first place, the plaintiff calls your attention to the fact that the arch pipe as put in may have been of old material, upon the testimony of one of the persons employed to put it in; he calls your attention to the claim (the plaintiff's claim) that the pipe was too short; and calls your attention to his claim that the pipe was defective in not being fastened at the lower end." And the plaintiff still further insisted that the accident itself, under the circumstances, was *prima facie* evidence of negligence, and that the rule *res ipsa loquitur* was applicable.

At the close of the evidence the defendant asked for several rulings, some of which were given and some refused. Many of the questions raised at the trial we have no occasion to consider, since we are of opinion that there was error in one respect in the manner in which the judge dealt with the requests.

The tenth request was as follows: " The jury cannot find the defendant guilty of negligence in respect to the method of attaching the lower end of the arch pipe, which it had adopted and was using during the repairs on this engine before the accident." We understand this request to refer to the general method adopted by the company of attaching the lower end of the arch pipe, namely, by a slip joint, and not to the question whether in this particular case that method was properly carried out.

In other words, the request was in substance for a ruling that upon this evidence the jury would not be justified in finding that the defendant was guilty of negligence in respect to adopting the slip-joint method, and a majority of the court think the instruction should have been given. All the witnesses, both those called by the plaintiff and those by the defendant, testified that the slip-joint method was proper and safe.

One Quaid, the engineer in charge of the train, called by the plaintiff, testified that for some time before the accident this method had been practised by the company, but that the practice had previously been to use a tight fastening.

One Corbett, also called by the plaintiff, testified that he had been employed continuously as boiler maker at Norwood by the defendant for fifteen years, and that he put in this pipe. He described it in detail, and, on cross-examination, stated that he had never put in any arch pipes except for the defendant, but that he had put them in frequently for the defendant; that the lower end of the arch was formerly fastened with a thread and nut, but that two or three years, he should think, before the accident the method had been changed to the slip joint, and that the change was made because the slip joint was thought to be stronger and better.

One Kearsley, called by the defendant, testified that he was the general master mechanic of the defendant company; that he had had to do with the construction and repair of locomotives about thirty-three years; that he came into the defendant's employ shortly before the accident; that this slip-joint method was in use on the railroad when he came upon it, and had been continued by him ever since; that he preferred this way, and he thought it was the strongest way to put the pipe in, as it had

not a chance to break; and — on cross-examination — that the method was proper.

One Richards, called by the defendant, testified that he was a machinist now in the employ of the Dwight Machine Company, at Hartford; that in April, 1893, he was the general foreman of the defendant's repair shops, his duty being to exercise general supervision over the shops to see that the work was properly done; that he had had about thirty years' experience on various railroads and elsewhere with the engineering department of railroads; and — on cross-examination — that he believed the arch pipe was properly made and properly put in.

Other witnesses testified about the pipe, but there was no testimony whatever as to whether this method was in use elsewhere, and what was the method adopted elsewhere; while it did appear that for two or three years before the accident this method had been adopted and continuously used by the defendant, and it did not appear that there was ever before any trouble.

The advantages and disadvantages of the loose joint and the tight joint were explained to the jury.

The burden was upon the plaintiff to show negligence. On this evidence we do not think the jury were warranted in finding the defendant guilty of negligence in respect to the method of attaching the lower end of the flute — that is, by the use of a slip joint.                    *Exceptions sustained.*